UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MOSES R. KIRSCHKE,

        Plaintiff,                Case No. 2:17-cv-145

v.                                      Honorable Gordon J. Quist

DUNCAN MACLAREN et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MacLaren and Harrington. However, Plaintiff's claims against Defendants Unknown Parties ##1-4 for opening his legal mail outside his presence are not clearly frivolous, so Plaintiff will be permitted to amend his complaint within **28** days to avoid dismissal of these claims.

**Discussion**

I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Warden Duncan MacLaren, Assistant Resident Unit Supervisor Patrick Harrington, and Mailroom Personnel Unknown Parties #1, #2, #3, and #4.

Plaintiff alleges that in 2015, he filed complaints with the Ombudsman's office which included claims that his mail had been arbitrarily opened and tampered with, and that he had been wrongfully terminated from his job assignment. On December 21, 2015, an analyst named "Christin M. Harris" came to the facility to talk with Plaintiff and other prisoners about their pending complaints.

Plaintiff alleges that on December 29, 2015, he went to Defendant Harrington's office to mail out three pieces of legal mail. Defendant Harrington stated, "here we go again . . . more debt for [the State] . . . come back in a minute . . . I'm busy right now." *See* ECF No. 1, PageID.9. Plaintiff returned a half hour later, but was again sent away because Defendant Harrington was on the phone. Plaintiff returned to Defendant Harrington's office two more times before he was told that none of the mail qualified as legal mail. Plaintiff states that two of the items were going to courts and another was going to an attorney. Plaintiff states that Defendant Harrington had previously authorized postage for mail going to that same attorney. Plaintiff's grievance regarding this conduct was denied. Plaintiff unsuccessfully attempted to mail the same

three items on January 8, 2016, although Defendant Harrington authorized postage for two other items addressed to attorneys. Defendant Harrington told Plaintiff that he was "just going to have to wait til next month's indigent loan." Plaintiff filed another step I grievance.

On Janury 14, 2016, around 11:30 a.m., Plaintiff went to Defendant Harrington's office to mail out two complaints against Defendant Harrington to the Office of the Legislative Ombudsman. Defendant Harrington glanced at the contents and told Plaintiff to seal them up. Defendant Harrington then signed the disbursement authorization. However, unbeknownst to Plaintiff, these complaints were held by Defendants Unknown Parties ##1-4. On January 21, 2016, the complaints were returned to Plaintiff with one of the envelopes open and the notation "not legal." On January 22, 2016, Plaintiff asked Defendant Harrington why his mail had been returned, and Defendant Harrington claimed that he did not know. Defendant Harrington instructed Plaintiff to write a kite and to fill out a new disbursement form. In the kite, Plaintiff noted that he had been given a postage loan for mail addressed to the Ombudsman on January 8, 2016, and that any further interference would be reported to the Ombudsman. Plaintiff received a response stating that mail to the Ombudsman's office was not considered legal mail for the purpose of postage loans. The response cited MDOC Policy Directive 03.02.135 ¶ N, which states that outgoing mail from an offender to the Ombudsman shall be handled in the same manner as mail to other state public officials. In addition, the Court notes that funds for additional first class postage shall only be loaned to prisoners who lack sufficient funds (1) to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation, (2) to mail a grievance or a class II or III misconduct appeal to another facility, or (3) to mail a step III grievance or request for rehearing to the Central Office. MDOC Policy Directive 05.03.118 ¶¶ K-N.

3

On January 25, 2016, Defendant Harrington denied Plaintiff funds for another piece of legal mail that had been addressed to the United States District Court. Defendant Harrington inspected the mail and informed Plaintiff that it was not legal mail. Plaintiff explained that the mail was a request for forms to file a lawsuit and that he could not file a lawsuit without the proper forms. Defendant Harrington repeated that the mail did not qualify as legal mail.

On January 27, 2016, Plaintiff's cell mates told him that Defendant Harrington had been looking for him. On January 28, 2016, Plaintiff went to Defendant Harrington's office and Defendant Harrington asked Plaintiff if he had any money. Plaintiff asked why. Defendant Harrington told him that if he did not have any money in his account his letter to the Ombudsman's office was not going to be sent because it was not legal mail. Later that day, Plaintiff received a response to one of the kites he had written to the mailroom, which stated that mail to the Ombudsman's office is not legal mail. In addition, some mail that Plaintiff had attempted to send to the Ombudsman's office and to the Court for forms was also returned to him with a notation indicating that the mail did not qualify as legal mail. Plaintiff's mail had been opened and searched outside his presence, which Plaintiff claims violated his right not to have outgoing legal mail read by prison officials. Plaintiff filed two step I grievances.

Plaintiff claims that Defendants engaged in a conspiracy to violate his rights under the First Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the Court notes that Plaintiff fails to make specific factual allegations against Defendant MacLaren, other than his claim that he failed to conduct an investigation in response to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant MacLaren engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant MacLaren.

Plaintiff claims that Defendants Harrington and Unknown Parties ##1-4 violated his right of access to the courts by refusing to provide postage loans for outgoing mail on multiple occasions. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's

6

fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcoming in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

7

Plaintiff claims that Defendants interefered with his ability to send out certain pieces of mail to attorneys, the court, and to the Ombudsman's office, by denying him postage loans after Plaintiff exhausted the amount of indigent mail he was allowed each month. Plaintiff fails to allege facts indicating that any of the items he was attempting to mail related to pending lawsuits. In addition, Plaintiff attaches numerous exhibits to his complaint, which include grievance responses indicating that the mail at issue did not relate to pending litigation. Therefore, the grievance reviewers found that the mail did not qualify for expedited handling. *See* PageID.52, PageID.76, PageID.81, PageID.96, PageID.100, PageID.149, PageID.155, PageID.176, and PageID.281. In order to state a claim for a denial of access to the courts, Plaintiff must demonstrate an actual injury to pending or contemplated litigation. *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001)(citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Plaintiff has failed to make any such showing. Therefore, his claim regarding the denial of postage is properly dimissed.

Plaintiff claims that Defendants violated his First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that the Defendants' conduct with regard to his outgoing mail was motivated by a desire to retaliate against Plaintiff for filing grievances. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

9

In this case, Plaintiff's allegation that he filed grievances during the time that he was denied postage and his mail was opened is insufficient to show a retaliatory motive. Therefore, his retaliation claims are properly dismissed.

Plaintiff claims that Defendants conspired with each other to violate his rights by interfering with his legal mail. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving several individuals. Plaintiff's allegations to no show a link or agreement between the alleged conspirators. Plaintiff relies entirely on a highly attenuated inference from the mere fact that he has been subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while

10

hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the pertinent time period were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Finally, the Court notes that Plaintiff's claim that Defendants Unknown Parties ##1-4 opened his legal mail outside his presence is not clearly frivolous and may not be dismissed on initial review. However, because the Court is unable to serve unnamed parties, Plaintiff will be required to amend his complaint to identify at least one Unknown Party in order to avoid dismissal of his remaining claims without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MacLaren and Harrington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Unknown Parties ##1-4 .

An Order consistent with this Opinion will be entered.


Dated: March 2, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE